(C.D. 4067)

CHEMIRAD CORPORATION *v.* UNITED STATES

---

[1] Survey I A–5 on "Blacking, Cleaning, and Polishing Preparations", page 8.
[2] Summary of Tariff Information 1921, page 52. Summary of Tariff Information 1929, page 91.
[3] Page 178.
[4] Page 313.

United States Customs Court, First Division

(Decided August 28, 1970)

*John Irwin Dugan* for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Brian A. Goldstein,* trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: These protests, consolidated for the purpose of trial, place in issue the tariff treatment of importations of "Polymerized Ethylene Imine" (hereinafter called PEI). PEI is used in various manufacturing processes in the paper, textile and rubber industry. The importation is composed of 50 percent PEI and 50 percent water by weight. It was classified pursuant to item 430.00 of the Tariff Schedules of the United States as a mixture of two or more organic compounds. That item calls for the rate of duty of 10.5 per centum ad valorem "but not less than the highest rate applicable to any component compound." Accordingly, the importation was assessed with duty at the rate of 3 cents per pound plus 15 per centum ad valorem as provided for in item 425.52 for "other" nitrogenous compounds.

Plaintiff does not dispute the fact that the importation was classified pursuant to the correct provision as other nitrogenous compounds but claims that the assessment of duty on the entire weight of the importation is in error. Plaintiff contends that PEI is a single compound in water entitled to the treatment set forth in headnote 2(b) of schedule 4.

> (b) The term *"compounds"*, as used in this schedule includes a solution of a single compound in water, and, in determining the amount of duty on any such compound subject to duty in this schedule at a specific rate, an allowance in weight or volume, as the case may be, shall be made for the water in excess of any water of crystallization which may have been in the compound.

In accordance with the above, plaintiff contends that the 3 cents per pound duty should be applied only to the actual weight of the PEI comprising 50 percent of the importation. In light of this contention the dispute centers on whether or not the importation is a single compound or mixture of compounds. This draws our attention to the definition of compounds found in headnote 2(a), schedule 4.

2. (a) The term *"compounds"*, as used in this schedule, means substances occurring naturally or produced artifically by the reaction of two or more ingredients, each compound—

(i) consisting of two or more elements,

(ii) having its own characteristic properties different from those of its elements and from those of other compounds, and

(iii) always consisting of the same elements united in the same proportions by weight with the same internal arrangement.

The court's understanding of the issues herein, has been considerably assisted by the testimony of three witnesses, Dr. Hans Osborg and Dr. Norbert M. Bikales, for the plaintiff and Dr. Clarence R. Dick, for the defendant.

The facts herein are as follows: The importation is a polymer, a large molecule constructed from the "mer" or more properly, "monomer", a single molecule. The monomer is the building block which by a chemical process, is joined to itself repeatedly forming chains of various lengths and possessing various branchings. Each of these long chains is a molecule of the polymer.

The monomer in this case is ethyleneimine which consists of two carbon atoms, a nitrogen atom and five hydrogen atoms and is represented diagrammatically as follows:

$$
\begin{array}{c}
\text{H} \\
\text{N} \\
\diagup \diagdown \\
\text{H}_2\text{C}\text{----}\text{CH}_2
\end{array}
$$

The polymer structure is represented as follows with the repetition of the hydrogen atoms eliminated for the sake of clarity.

$$
\begin{array}{l}
\text{N} \\
\text{C} \\
\text{C} \\
\mid \\
\text{N—C CN—C CN—C CN} \\
\text{C} \\
\text{C} \\
\mid \\
\text{C CN—C CN—C C N—C CN—C CN—C CN} \\
\mid \\
\text{C} \\
\text{C} \\
\text{N} \\
\mid \\
\text{C} \\
\text{N} \\
\mid \\
\text{C} \\
\text{C} \\
\text{N—C CN—C CN} \\
\mid \\
\text{C} \\
\text{C} \\
\text{N}
\end{array}
$$

Regardless of the length of the polymer and the number of branchings it possesses, the building block is the same monomer. The ratio of carbon, nitrogen and hydrogen, is always the same by weight.

With this understanding of the importation, we can_turn to the definition of compounds, *supra*, and analyse it point by point. First, it is plain that the importation is a substance produced artifically by the reaction of two or more ingredients. Second, it is clear that it is composed of two or more elements. Third, it is established that its characteristic properties are different from those of its constituent element and other compounds.

We find that the issue has been reduced to whether or not this substance has the "same internal arrangement." If by this statutory language is meant, uniformity in the length of the chains and branchings, in sum, *physical uniformity*, the PEI is not a compound within the meaning of the tariff schedules. We are of the opinion, however, that it is *chemical* uniformity which the statute speaks of and that in this instance it is the repetition of the monomer which is the key to the internal arrangement and which provides the polymer with the "sameness" required by the statutory definition of a compound.

We are brought to this conclusion by our evaluation of the testimony of the witnesses and our study of the authorities. We find that this view of internal arrangement is in accordance with chemical usage and commercial realities. We reach the opinion that despite variations in the length of its chains and its branchings the polymer in question is essentially a single compound within the meaning of the statutory language. In our opinion the record establishes that PEI is manufactured and used as a single compound and functions chemically as such.

In order for defendant to successfully defend the classification against the thrust of plaintiff's proof and the *prima facie* case it supports, it would have been necessary for it to prove that the individual chains of the polymer possess distinct individual chemical properties dependent on the variations in length and branchings, or, in short, that the importation is a mixture within the meaning of the tariff schedules. Headnote 3 (a) and (b) of schedule 4 sets forth clearly the meaning of the term "mixtures" which term is the only logical alternative to plaintiff's claim that the importation is a single compound.

> 3. (a) The term *"mixtures"*, as used in this schedule, means substances consisting of two or more ingredients (i.e., elements or compounds), whether occurring as such in nature, or whether artificially produced (i.e., brought about by mechanical, physical, or chemical means), which do not bear a fixed ratio to one another and which, however thoroughly commingled, retain their individual chemical properties and are not chemically united. The fact that the ingredients of a product are incapable of separation or have been commingled in definite proportions does not in itself affect the classification of such product as a mixture.

(b) The term *"mixtures"*, as used in this schedule, includes solutions, except solutions defined as compounds in headnote 2(b) of this schedule.

While there are indications in the proof that the activity of the polymer is dependent to a certain extent on the complexity of the structure, there is insufficient evidence to indicate that the importation consists of commingled units each with distinctly identifiable and distinguishable characteristics. It may be that future research will reveal that the individual and different lengths of molecules of the same polymers are as distinct and different as salt and water, in which case their combination will be known as a mixture in accordance with the above definition. Presently, however, such is not the case and the evidence of record does not permit such a conclusion. The importation herein is a single compound and not a mixture. See, *Sandoz Chemical Works, Inc.* v. *United States*, 50 CCPA 31, 34, C.A.D. 815 (1963), for our appellate court's discussion of a similar issue.

It would be a mistake to be distracted from the central issue of this case, namely, what is meant by "internal arrangement" and concentrate unnecessarily upon the various definitions of polymer offered by both parties. In a matter of such complexity, it is inevitable that some of the definitions will contain language of varying degress of support for the opposing contentions. This is the case in the discussion of polymers in the Encyclopedia of Chemical Technology [1] which states that "most synthetic and natural high polymers are obtained and investigated in a state where significant differences occur in the molecular weight of the individual macromolecules so that the material must be considered as a mixture of homologous polymeric constituents." We do not view this use of the word "mixture" and other such uses as describing the nature of the importation in an accurate chemical sense. This polymer is a mixture only in an abstract sense, in that it is a commingling of separate units. In a chemical sense it conforms to our understanding of a compound. In the present state of chemical knowledge, we consider the properties of the importation to be those possessed by its individual units, namely, the polymers, regardless of their lengths and branchings.

Defendant has cited a ruling of the Bureau of Customs (T.D. 54619 (23) in 93 Treas. Dec. 263) that tetrapropylene and tripropylene which are produced by the polymerization of propylene were classifiable under paragraph 5 of the Tariff Act of 1930 as mixtures of chemical compounds. Defendant also cites certain language in the Tariff Classification Study Explanatory Notes to Schedule 4, part 10, dealing with the classification of the hydrocarbon compounds of butadiene, butyl--

---

[1] Kirk-Othmer, Volume 10, page 958.

ene, ethylene, and propylene, stating that they would be classifiable pursuant to the provision for "mixtures of hydrocarbons" and that each isomer of these hydrocarbon compounds would be considered a single hydrocarbon compound.

These citations have no bearing on the issue herein. We do not believe that a Bureau of Customs ruling on those two substances was adopted by the Tariff Schedules of the United States or provided a general rationale for the classification of polymers. Second, we are of the opinion that the sources cited by defendant are related to a particularly narrow area of dispute involving chemical products derived by distillation. Thirdly, and most important, we are of the opinion that the Tariff Schedules of the United States are intended to mark a fresh start in the definition of the terms compounds and mixtures as is explained in the Tariff Classification Study Explanatory Notes, Schedule 4, at page 4.

> Headnote 2 includes definitions of two important chemical terms, namely, compounds and mixtures. In the existing schedules these terms appear numerous times and their interpretations have not always been uniform. The proposed definitions will insure that the terms are uniformly interpreted.

In conclusion, we are of the opinion that the instant importation consists of a single compound in conformity with the definition of that term found in the headnotes to schedule 4. We base this conclusion on our finding that the uniform internal arrangement required of a compound by the statutory language is, in the case of polymers, present by reason of the repetition of the basic monomer.

Accordingly, in determining the amount of duty on the importation, allowance should be made for the water in which it is dissolved.

Judgment will issue accordingly.